In the Matter of HAROLD L. DRIMMER, as Chairman of the Board of Trustees of Westchester Community College, et al., Appellants, v BOARD OF TRUSTEES OF THE STATE UNIVERSITY OF NEW YORK et al., Respondents.

Third Department, December 29, 1983

**APPEARANCES OF COUNSEL**

*Lester D. Steinman* and *Lovett & Gould* (*Jonathan Lovett* of counsel), for appellants.

*Robert Abrams, Attorney-General* (*Peter G. Crary* and *William J. Kogan* of counsel), for respondents.

**OPINION OF THE COURT**

KANE, J.

Section 6304 of the Education Law governs State financing of local community colleges. Subdivision 1 of section 6304 was amended in 1970 to provide an increase in State

operating aid reimbursement to any community college implementing an acceptable "Full Opportunity Program" (L 1970, ch 811). Pursuant to this amendment, State financial aid was increased from 33⅓% to 40% of a college's "operating costs". This statutory mandate to pay financial aid is not, however, without limitation. Among other restrictions, section 6304 provides that: "Such operating costs shall be subject to such maximum limitations and regulations as shall be prescribed by the state university trustees with the approval of the director of the budget. Such limitations shall be based upon maximum allowances per student for each student in attendance in the case of operating costs, or in accordance with such other factors as may be deemed appropriate." (Education Law, § 6304, subd 1, par b, cl [i].)

In implementing subdivision 1 of section 6304 of the Education Law, respondent Board of Trustees of the State University of New York (trustees) and respondent State Budget Director adopted 8 NYCRR 602.8, which, *inter alia,* provides that State financial aid shall be determined by the lowest value of the following:

"(i) two fifths of the net operating budget of the college, or campus of a multiple campus college, as approved by the State University trustees; (ii) two fifths of the net operating costs of the college, or campus of a multiple campus college; or (iii) the total of the following:

"(a) the budgeted or actual number (whichever is less) of full-time equivalent students enrolled in programs eligible for State financial assistance multiplied by $930 plus a $35 increment if the financial contribution to the operating costs of the college, by the local sponsoring jurisdiction, is no less than the equivalent in dollars of one-half mill (50 cents per $1,000), as calculated against the total valuation of taxable real property in such jurisdiction as most recently tabulated by the State Board of Equalization and Assessment;

"(b) the budgeted or actual total average number (whichever is less) of full-time disadvantaged students multiplied by $193 if the average number of full-time disadvantaged students coming from the sponsorship area as a percentage of the total average number of full-time students coming

from the sponsorship area is no less than the average number of disadvantaged in the population of the sponsorship area for the calendar year immediately preceding the year in which the community college fiscal year commences as a percentage of the total population in the sponsorship area, as reported in the most recently available census; and

"(c) one half of rental cost for physical space." (Former 8 NYCRR 602.8 [c] [1].)[1]

8 NYCRR 602.8 (c) (1) (iii) is the so-called "Ingler formula", the validity of which is the subject of this CPLR article 78 proceeding.

As Special Term noted, the primary issue to be determined is whether respondent trustees have been given the authority to limit State assistance in a manner which results in a full opportunity community college receiving less than 40% of its operating budget without first determining that the operating budget is unreasonable. Although section 6304 of the Education Law is rather inartfully drawn, we agree with Special Term that the regulation in question does not conflict with said section but merely fills in the interstices as delineated by the Legislature (see *State Div. of Human Rights [Valdemarsen] v Genesee Hosp.,* 50 NY2d 113). Paragraph a of subdivision 1 of section 6304 states that operating costs must be approved by respondent trustees and paragraph b of the same subdivision specifically gives the trustees, with the approval of the State Budget Director[2] the authority to set maximum limitations to the operating costs. Such limitations, however, are not tied into the actual cost of operating a community college. Rather, the Legislature specifically provided that the limitations imposed by the trustees "shall be based upon maximum allowances per student * * * or in accordance with such other factors as may be deemed appropriate" (Education Law, § 6304, subd 1, par b, cl [i]). Accordingly, we are unable to agree with the dissenter that section 6304 clearly requires the trustees to determine operating costs and then apply a fraction to that

---

1. The current regulation (8 NYCRR 602.8 [c] [1]) does not differ substantially from the provisions of that regulation, applicable during the fiscal year in question.

2. The record indicates that the subject regulation was approved by the State Budget Director.

figure. Indeed, given the fact that the limitations upon operating costs are not tied into *actual* operating costs, the procedure found mandatory by the majority differs only academically from the method set forth in 8 NYCRR 602.8.

Petitioners also contend that assuming, *arguendo,* respondent trustees have the authority to promulgate a regulation such as 8 NYCRR 602.8 (c), this regulation is arbitrary and capricious. This contention must be rejected. Respondents, through their expertise, have established a formula that takes into account various factors and, contrary to petitioners' contention, the fact that geographic cost disparities are not a part of this formula fails to show a lack of rationality. In sum, petitioners are merely expressing a view that another formula might be more appropriate. It is not the role of this court to make such a determination.

The judgment should be affirmed, without costs.

MIKOLL, J. (dissenting). I respectfully dissent.

There should be a reversal, 8 NYCRR 602.8 (c) (1) (iii) declared null and void and the matter remitted to respondent Board of Trustees of the State University of New York (trustees) for a determination of the amount of State aid due petitioner Westchester Community College. Regulation 8 NYCRR 602.8 (c) (1) (iii) is in violation of the clear meaning of section 6304 (subd 1, pars a, b) of the Education Law and is therefore null and void.

A court will generally "defer to the interpretation given a statute by the agency charged with its enforcement if the interpretation is neither irrational, unreasonable, nor inconsistent with the governing statute" (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 597). Notwithstanding: "It is well established that in exercising its rule-making authority an administrative agency cannot extend the meaning of the statutory language to apply to situations not intended to be embraced within the statute * * * Nor may an agency promulgate a rule out of harmony with or inconsistent with the plain meaning of the statutory language" (57 NY2d, at p 595).

Subdivision 1 of section 6304 of the Education Law clearly states that when a community college has an approved "Full Opportunity Program", it is entitled to State

financial aid equal to two fifths of operating costs (Education Law, § 6304, subd 1, par a). Operating costs are defined in paragraph b of subdivision 1 of section 6304 of the Education Law.

Under paragraph b, operating costs are subject to maximum limitations and regulations as prescribed by respondent trustees with the approval of the State Budget Director. In effect, the trustees determine the maximum operating costs of the college and paragraph a mandates that two fifths of these costs be applied in the calculation of State aid.

Regulation 8 NYCRR 602.8 (c) (1) (iii) employs a formula with little regard to operating costs. The "Ingler formula" determines the total State aid for a college by making clear that 40% of the college's operating costs eligible for State aid may not exceed a specified amount. This places the calculation of State aid before a determination of operating costs and is in direct conflict with the clear meaning of section 6304 of the Education Law.

The Education Law (§ 6304, subd 1, pars a, b) specifically requires a formula of two fifths of operating costs to determine State aid. While the Ingler formula, in effect, may arrive at a similar result, the trustees are not performing their statutory duty of establishing the operating costs. Nor does employment of the Ingler formula provide a sufficient record for review by a court concerning the trustees' determination of operating costs. Consequently, use of the Ingler formula is improper.

Finally, petitioners' request to be granted $1,898,627 in State aid allegedly denied it by use of the Ingler formula must be regarded as premature. Since respondents have not calculated what the maximum limitations of operating costs are or what amount is proper, the matter must be remitted for such a determination.

SWEENEY, J. P., CASEY and WEISS, JJ., concur with KANE, J.; MIKOLL, J., dissents and votes to reverse in a separate opinion.

Judgment affirmed, without costs.